

# IN THE DISTRICT COURT OF LOGAN COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| TRENT NERE, | |
| Plaintiff, | |
| v. | Case No. CJ-2019- 203 |
| CITY OF CRESCENT, | |
| Defendant. | |

## PETITION

COMES NOW Plaintiff, Trent Nere ("Nere"), for his cause of action against Defendant, City of Crescent, a municipality within the State of Oklahoma, ("Crescent") states as follows:

### NATURE OF ACTION AND INTRODUCTION

1. This is an action seeking redress for Crescent's termination of Nere in retaliation for his refusal to perform an act that is a violation of a clear mandate of public policy and for performing an act consistent with clear and compelling public policy (i.e. Burk Tort). Nere's action specifically seeks to enforce rights under Oklahoma law on behalf of himself. As redress for Crescent's willful violations of Oklahoma law, Nere prays for and demands an amount that will reasonably and fairly compensate him for the damages suffered as a direct result of the wrongful termination including, but not limited to, (1) lost wages (front and back); (2) any

EXHIBIT 2

physical or mental distress or anguish that Nere has suffered as a result of the discharge; and (3) punitive damages.

## JURISDICTION AND VENUE

2. All of the claims at issue herein arose in Logan County, Oklahoma.

3. Defendant conducts business in Logan County, Oklahoma.

4. Venue is proper in this Court, pursuant to 12 Okla. Stat. § 134, because all or a substantial part of the events or omissions giving rise to the claims set forth herein occurred within the judicial district of the Court, and because Defendant is located within the jurisdiction of the Court

## STATEMENT OF FACTS

### *The Parties*

5. Defendant Crescent is a municipality located in the State of Oklahoma.

6. Plaintiff Nere is a male citizen of the United States and a citizen of Creek County, Oklahoma.

7. At all times relevant to this cause of action, Nere was an employee of Defendant Crescent.

### *Oklahoma DEQ Regulations*

8. At all times relevant to this lawsuit, Defendant Crescent was aware that, pursuant to Oklahoma DEQ Regulations, it is required to comply with the Environmental Protection Agency ("EPA") and Oklahoma Department of Environmental Quality ("DEQ") laws and regulations.

9. At all times relevant to this lawsuit, Defendant Crescent was aware that, pursuant to Oklahoma DEQ Regulations, it is required to not discharge or bypass wastewater outside of the total retention lagoon system. Wastewater is water that "generally originates as human waste from certain activities including using toilet activities, washing, bathing, preparing foods, and washing laundry." OAC 252:619–1–2. Discharging or bypassing wastewater outside of the total lagoon system could lead to devastating consequences to human and animal health, cause damage to waterways, and cause damage to the environment.

10. At all times relevant to this lawsuit, Defendant Crescent was aware that, pursuant to Oklahoma DEQ Regulations, it is required to "ensure that any and all bypasses and/or discharges from a total lagoon system are reported to DEQ." OAC 252:619–1–4.

11. At all times relevant to this lawsuit, Defendant Crescent was aware that, pursuant to Oklahoma DEQ Regulations, "[a]ll such bypasses and/or discharges shall be considered a violation . . . and be subject to enforcement as an unpermitted discharge to waters of the State in violation of the Oklahoma Pollutant Discharge Elimination System Act." *Id.*

12. At all times relevant to this lawsuit, Defendant Crescent was aware that, pursuant to Oklahoma DEQ Regulations, if someone knowingly violates

3

the Oklahoma Pollutant Discharge Elimination System Act, that person is subjected up to fines of One Million Dollars ($1,000,000.00) and up to fifteen (15) years in prison. In addition, that person could be subject to civil action by anyone affected by the violation. 27 O.S. § 2-6-206.

### *Crescent Wrongfully Terminated Nere*

13. As part of Nere's job responsibilities, he was required to ensure the City of Crescent was in compliance with the aforementioned laws and regulations. During the relevant portion of this complaint, Nere was the only employee licensed by the DEQ to ensure compliance.

14. During Nere's time of employment, he observed that the City of Crescent's total retention lagoon system was carrying excess wastewater. If the wastewater was not disposed of properly in the near future, the wastewater would discharge or bypass the lagoon system, which would violate the Oklahoma Pollutant Discharge Elimination System Act.

15. Nere brought the wastewater disposal situation to the attention of Crescent's City Manager Ryan Wallace. Wallace sough information from Nere on how to address the situation. Nere contacted DEQ to confirm the proper procedure to dispose of the excess wastewater before it caused overflow or bypass from the lagoon system.

16. DEQ confirmed with Nere that the City of Crescent may not dispose of the wastewater by opening the lagoons to drain the water. DEQ advised that the City of Crescent would be required to use certain tools and equipment to remove the wastewater from the lagoon to properly dispose of it.

17. Nere informed City Manager Ryan Wallace of the proper procedure to dispose of the wastewater in compliance with DEQ and EPA regulations and laws. Wallace responded that the project would be too costly to address.

18. Nere observed the wastewater situation carefully thereafter and stayed in regular contact with the DEQ. Nere regularly informed Wallace of the status of the lagoon's wastewater and requested that Wallace act to address the situation. Wallace refused.

19. As of December 2018, Nere observed that the wastewater was mere days or weeks away from discharging or bypassing the lagoon system. Nere contacted Wallace stating the situation must be addressed immediately. Wallace directed Nere to Steven Deflantis who is a former employee that formerly acted in Nere's position with Defendant Crescent. Wallace and Deflantis directed Nere to "open the lagoons" to drain the wastewater into the creek because they had done the same before.

20. Nere refused and contacted the DEQ. The DEQ instructed Nere to refuse to comply with the demand to drain the lagoons into the creek and reminded Nere of his potential criminal and civil liability if he were to do so.

21. The DEQ visited the City of Crescent the following day and met with Wallace. When approached by the DEQ, Wallace contacted Nere to attend the meeting. When DEQ informed Wallace of Nere's complaint, Wallace informed Nere that he is no longer allowed to communicate with DEQ nor allowed to make decisions related to Crescent's compliance with EPA and DEQ laws and regulations. DEQ informed Wallace that the only individual responsible for Crescent's compliance with EPA and DEQ laws and regulations is Nere and that he is required to communicate with DEQ. In addition, DEQ informed Wallace that Wallace is not allowed to make these decisions without consultation with the DEQ nor does Wallace possess the proper education and licensing to do so.

22. Later that day, Wallace aggressively confronted Nere about his complaint and Nere defended his stance in reporting the situation due to Wallace's failure to address it before. Wallace stated, "[t]hose DEQ guys do not know what the fuck they are talking about."

23. On or about January 1, 2019, DEQ cited the City of Crescent with a compliance form that required the City of Crescent to address the wastewater situation within fifteen (15) days.

24. Between January 1, 2019, and January 30, 2019, Wallace aggressively confronted Nere on multiple occasions for his "disloyalty" to the City of Crescent.

25. On or about January 30, 2019, Wallace terminated Nere for the sole reason of "I can never trust you again to make calls that need to be made to benefit the city."

26. A significant factor in Crescent's decision to terminate Nere was retaliation for his failure to perform the conduct requested of him that was a clear violation of Oklahoma public policy.

27. A significant factor in Crescent's decision to terminate Nere was Nere's actions of performing an act consistent with clear and compelling public policy.

28. On or about February 26, 2019, Plaintiff served Defendant with a GTCA Notice alleging the aforementioned facts.

## CAUSATION OF PLAINTIFF'S DAMAGES

29. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered damages described hereafter.

## DAMAGES SUSTAINED BY PLAINTIFF

30. Plaintiff has suffered lost earnings, past and future, attorneys' fees and costs, and emotional and physical distress in pursuing this action and requests all available damages, including punitive damages for Defendant's willful actions.

31. The Defendant's actions were willful, wanton, or, at the least, in reckless disregard of Plaintiff's rights.

## DEMAND FOR JURY TRIAL

32. The Plaintiff demands a jury trial for all issues of fact presented by this action.

WHEREFORE, Plaintiff prays for judgment against the Defendant, in a sum excess of the amount required for diversity jurisdiction under 28 U.S.C. § 1332 (currently $75,000.00) plus interest, costs, attorney's fees, and all such other and further relief as to which Plaintiff may be entitled.

Respectfully submitted,

*(signature)*

D. Colby Addison, OBA #32718
Leah M. Roper, OBA #32107
LAIRD HAMMONS LAIRD, PLLC
1332 S.W. 89th St.
Oklahoma City, OK 73159
Telephone: 405.703.4567
Facsimile: 405.703.4061
E-mail:     Colby@lhllaw.com
ATTORNEYS FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED**